UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND HOSPITAL,
Plaintiff,

v.  C.A. No. 09-226-ML

UNITED NURSES AND ALLIED
PROFESSIONALS, LOCAL 5098,
Defendant.

MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff, Rhode Island Hospital's ("Hospital") motion to vacate an arbitration award and Defendant's, United Nurses and Allied Professionals, Local 5098 ("Union") motion to confirm the arbitration award.[1] The Hospital filed its motion pursuant to Fed. R. Civ. P. 12(c) and the Union has filed its motion pursuant to Fed. R. Civ. P. 56. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the case arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 10.

I. Standards of Review

A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26 (1st Cir. 2008). In deciding a motion for judgment on the pleadings the Court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion . . . and draw all reasonable inferences in

---

[1] The Union has filed a counterclaim, which in essence, is a motion to confirm the arbitration award.

1

[that party's] favor." Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007). Judgment on the pleadings is proper "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torress v. University of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991).

Judicial review of arbitral awards is "extremely narrow and exceedingly deferential." Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (internal quotation marks and citation omitted). A court's review of an arbitration award is highly deferential because the parties "have contracted to have disputes settled by an arbitrator" and thus, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." United

Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987). While the arbitrator's award must "draw its essence from the contract," to the extent that the arbitrator is "even arguably construing or applying the contract and acting within the scope of [her] authority, that a court is convinced [the arbitrator] committed serious error does not suffice to overturn [the] decision." Id. at 38.

A successful challenge to an arbitration award generally requires a showing that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990) (internal quotation marks and citation omitted). Moreover, an arbitral award is subject to being vacated when an "award is contrary to the plain language of the collective bargaining agreement" or where "it is clear from the record that the arbitrator recognized the applicable law – and then ignored it." Id. at 9; see also Kashner Davidson Securities Corp. v. Mscisz, 531 F.3d 68, 74-75 (1st Cir. 2008). This Court should uphold the arbitrator's decision so long as "it can find, within the four corners of the agreement, any plausible basis for [the arbitrator's] interpretation." El Dorado Technical Services, Inc. v. Union Gen. De Trabajodores de Puerto Rico, 961 F.2d 317, 319 (1st Cir. 1992) (emphasis added).

## II. Background

The pertinent facts are straight forward and are not in dispute. The Hospital and Union are parties to a collective bargaining agreement ("CBA"). The term of the CBA is July 1, 2007, through June 30, 2011. In May 2008, the Hospital changed the eight hour shift of incumbent employees to eight and one half hours with a thirty minute unpaid meal period. The Union filed

a grievance alleging that the Hospital violated the CBA by requiring the affected 8 hour shift employees to take a thirty minute unpaid meal period. The Hospital denied the grievance and the Union filed for arbitration.

The parties requested that the arbitrator do two things: (1) she should decide whether the Hospital violated the CBA when it changed the eight hour shifts of incumbent employees to eight and a half hour shifts with a thirty minute unpaid meal period; and (2), if the arbitrator found that the Hospital violated the CBA, she should fashion an appropriate remedy. The arbitrator determined that the Hospital did violate the CBA. She ordered the Hospital to modify the schedules of the aggrieved employees to comply with the CBA.

### III. Pertinent Provisions of the CBA

Article 2 of the CBA generally describes management rights regarding the number of shifts, hours of work and selection of employees. Article 2 provides, in part, that the

> Hospital retains the right to manage the operations of the Hospital and direct the working force; hire employees of its own selection . . . determine the <u>number of shifts</u>, the number of days in the workweek, <u>the hours of work</u> and the number of persons to be actively employed by the Hospital at any time . . . and, in general, to determine what work should be performed <u>as well as when</u>, where, how and by whom such work shall be performed. These enumerated rights of management are not all inclusive. <u>Except as expressly limited by specific provisions of this Agreement</u>, the Hospital retains all rights which pre-existed this Agreement.

Complaint Exhibit B Article 2 § 1 (emphasis added). Article 14 of the CBA more particularly governs hours of work, schedules and breaks and provides that the

> basic work week for full-time employees consists of thirty-five (35) to forty (40) hours of work per week. The workweek consists of the seven consecutive days beginning with the day shift on Sunday. The basic schedule for full-time employees shall include two days off in each week. <u>The basic day for full-time employees shall consist of shifts of eight, ten or twelve hours of work per day</u>. The basic workday is the twenty-four hour period beginning with the start of the

4

> day shift. The Hospital may, in its discretion, create positions and schedules that include four-hour shifts, provided that no employee shall involuntarily have her/his hours or shifts reduced or altered to include a four-hour shift.

Id. at Article 14 § 1 (emphasis added).

> The basic eight-hour work shifts are as follows: Day shifts shall begin at or after 6:00 a.m. and end at or before 6:00 p.m. Evening shifts shall begin at or after 3:00 p.m. and end at or before 1:00 a.m. Night shifts shall begin at or after 11:00 p.m. and end at or before 8:00 a.m.

Id. at § 2.

> <u>Employees scheduled to work six to eight hours shall receive one twenty-minute paid break</u>. Employees scheduled to work more than eight hours but less than ten hours will be provided an <u>unpaid meal period of one-half hour</u> and a paid break of fifteen minutes. . . . Employees are to be completely relieved of duty in order for the meal period to be unpaid and employees may leave their work areas.

Id. at § 7 (emphasis added).

> During the life of this Agreement it may be necessary for the employer to permanently change the regular shifts, assignment to departments, units or shifts and/or <u>hours of shifts</u> as they existed at the time this Agreement was executed. No such changes will be made without notice to and opportunity for discussions with the Union.

Id. at § 9 (emphasis added).

## IV. Contentions of the Parties

The Union argues that the arbitrator honored the plain language of the CBA and concludes that the arbitrator's decision is based upon a plausible interpretation of the CBA. The Hospital counters that the arbitrator's decision contravenes the plain language of the CBA by ignoring unambiguous management rights' language in the CBA. The Hospital also argues that the arbitrator exceeded her authority by substituting her judgment in place of the Hospital's judgment regarding patient care and dispensed her own brand of industrial justice. The Hospital

concludes that the arbitrator's decision is palpably wrong and fails to draw its essence from the CBA.

## V. Analysis

Article 2 of the CBA grants to the Hospital the "right to manage the operations of the Hospital" and to determine the "number of shifts," the "hours of work," the "methods and schedules of all services" and "to determine what work should be performed as well as when, where, how and by whom. . . ." Complaint Exhibit B Article 2 § 1 (emphasis added). Article 2 however, also provides that "[e]xcept as expressly limited by specific provisions of this [CBA], the Hospital retains all rights which pre-existed this [CBA]." Id. (emphasis added). Article 14 Section 9 of the CBA states that during the term of the CBA it "may be necessary for the [Hospital] to permanently change the regular shifts. . . units or shifts and/or hours of shifts as they existed at the time" the CBA was executed. Id. Article 14 § 9 (emphasis added).

While Article 2 and Article 14 § 9 grant the Hospital the authority to determine the hours of work, number of shifts and hours of shifts, the CBA also provides that employees "scheduled to work six to eight hours shall receive [only] one twenty-minute paid break" while employees "scheduled to work more than eight hours but less than ten hours" are entitled to an "unpaid meal period of one-half hour and a paid break of fifteen minutes." Id. at Article 14 § 7. The Hospital readily admits that the "only possible interpretation of Article 14, § 7 is that it outlines the breaks employees are entitled to receive based on the lengths of the shifts they are scheduled to work . . . ." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 3 (emphasis added). Consequently, the arbitrator was faced with a CBA that granted the Hospital the discretion to set the hours of shifts while, at the same time, it granted employees

specific delineated breaks based upon the length of the shift to which the employee was assigned.

The Union contends that the arbitrator honored the plain language of the CBA. The Hospital argues that Article 2 § 1 and Article 14 § 9 grant the Hospital the right to modify shifts and/or hours of shifts and confers upon the Hospital the express right to determine an employee's hours of work. The Hospital contends that the arbitrator ignored the "clear and unambiguous" management rights language in the CBA in fashioning her decision. Hospital's Memorandum of Law in Support of Motion for Judgment on the Pleadings at 1.

This Court finds that the arbitrator did not ignore the plain language of the CBA. The arbitrator specifically quoted both Article 2 and Article 14 § 9 in her decision. In fact, the arbitrator correctly observed that Article 14 § 9 was a "general reservation of management's right to permanently change the regular shifts and assignment to shifts and hours of shifts during the term of the contract." Complaint Exhibit A at 8 (emphasis added). What the Hospital fails to acknowledge, however, is that the arbitrator interpreted the plain language of the CBA by identifying competing provisions within the CBA and interpreting the CBA in light of those competing provisions.

The arbitrator found that the language of Article 14 § 7 ("employees scheduled to work six to eight hours shall receive one twenty-minute paid break") expressly limited the more general management rights language (contained in Article 2 and Article 14 § 9) granting the Hospital the authority to set the hours of shifts. "When more than one contract provision is implicated, an arbitrator is at liberty to determine which of the two competing contract provisions governs over the other." Millcraft-SMS Services, LLC v. United Steel Workers of America AFL-CIO-CLC, 346 F. Supp. 2d 1176, 1183 (N.D. Ala. 2004); see generally IMC-Agrico Co. v.

International Chemical Workers Council of the United Food and Commercial Workers Union, AFL-CIO, 171 F.3d 1322, 1328 (11th Cir. 1999) (when "there are two plausible interpretations of an agreement, then the arbitrator's choice of one over the other will be honored"); National Gypsum Co. v Oil, Chemical and Atomic Workers International Union, 147 F.3d 399 (5th Cir. 1998) (to the extent that there was a conflict between two sections of a CBA, arbitrator is entitled to resolve it).

The arbitrator's interpretation of the CBA is certainly plausible given that the CBA provides that the Hospital's rights are "limited by specific provisions" of the CBA. Complaint Exhibit B Article 2 § 1. The CBA reflects that the parties agreed on the length and type of employee breaks based upon the length of the shift of the employee. Article 14 § 7 specifically provides only for a paid 20 minute break and no unpaid meal period for employees working between 6 to 8 hours. Id. Article 14 § 7. The parties did not agree on a half-hour unpaid meal period for those employees working 6 to 8 hours shifts but did agree on such a period for those employees working more than 8 hours on a shift. Id. "[W]hen parties list specific items in a document, any item not so listed is typically thought to be excluded." Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 61 (1st Cir. 2001). In this CBA, the parties mutually agreed that 8-hour shift employees would receive just the one twenty minute paid break.

The arbitrator read the CBA as a whole and not as a conglomeration of disconnected provisions. See generally Casey v. Lifespan Corp., 62 F. Supp. 2d 471 (D.R.I. 1999) (court looks to explicit language of the CBA and reads the pertinent provisions in the context of the agreement as a whole). When the CBA is viewed in its entirety, the arbitrator's decision draws its essence from the CBA "since the specific governs over the general as a matter of contract

interpretation . . . ." Central States, Southeast and Southwest Areas Pension Fund v. Blue Ridge Trucking Company, No. 91 C 824, 1993 WL 303128 at * 7 (N.D. Ill. Aug. 9, 1993); Lawson v. F.D.I.C. 3 F.3d 11, 17 (1st Circuit 1993) ("it is a familiar precept of contract interpretation that the specific controls the general"); see generally Spenlinhauer v. R.R. Donnelley & Sons Co., 581 F. Supp. 2d 83, 89 (D. Me. 2008) (where "general and specific clauses conflict, the specific clause governs the meaning of the contract") (internal quotation marks and citation omitted).

The Hospital also argues that a prior arbitration award ("Dunn decision"), which the Hospital contends illustrates that the Hospital had changed employee schedules without the Union's agreement in the past, is authoritative in this dispute. The Hospital's position is unconvincing for two reasons. First, it is "black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions. Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances." El Dorada Technical Services, Inc. v. Union General De Trabajadores de Puerto Rico, 961 F.2d 317, 321 (1st Cir. 1992). Second, any reliance upon the Dunn decision is misplaced as the Dunn decision is inapposite. The Dunn decision did not involve a contractual provision which supported the aggrieved employees' claim. Complaint Exhibit C at 6 (noting that the "controlling consideration is that no provision of the labor agreement expressly gives to the . . . [employees] the contractual right in the holiday off weeks to work eight fewer hours than their regular weekly schedule"). In this instance there is a contractual provision in the CBA that supports the employees' claim. See Complaint Exhibit B Article 14 § 7; see generally Complaint Exhibit A at 9.

Since the arbitrator's award rests upon a "plausible interpretation" of the CBA, this Court

"must uphold it." <u>Salem Hospital v. Massachusetts Nurses Association</u>, 449 F.3d 234, 238 (1st Cir. 2006). Accordingly, the Hospital's motion for judgment on the pleadings is DENIED and the Union's motion for summary judgment is GRANTED.[2]

SO ORDERED

*/s/ Mary M. Lisi*
Mary M. Lisi
Chief United States District Judge
January 21, 2010

---

[2] The Hospital also argues that the arbitrator's creation of an extra-contractual definition of the phrase "hours of work" in the CBA is unfounded in fact and is based upon palpably faulty reasoning. The Hospital concludes that the arbitrator's definition so polluted the arbitrator's decision that it must be overturned by the Court. The Court, however, need not specifically address the Hospital's argument as the arbitrator's decision is based upon a plausible interpretation of the CBA without considering the arbitrator's definition of the phrase "hours of work."